# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DASHANE SEAMSTER | No. 2:25-mj-00392-KFW |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Adam Morin, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I have been employed as a Special Agent (SA) with the Federal Bureau of Investigation ("FBI"), since May 2017, and I am currently assigned to work in the Portland, Maine Resident Agency. I previously served as a Patrol Officer with the Portland, Maine Police Department from 2013 until 2017. Over the course of my law enforcement career, I have investigated a variety of crimes, to include drug offenses, firearms offenses, and other offenses related to violent criminal enterprises.

2. I make this affidavit in support of the requested criminal complaint and accompanying arrest warrant. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers, other agents, and witnesses. This affidavit is intended to provide the facts necessary for a determination of probable cause for the requested complaint and warrant.

## PROBABLE CAUSE

3.  In about January 2025, an FBI Confidential Human Source ("CHS")[1] provided Agents and Task Force Officers with information that DASHANE SEAMSTER was trafficking cocaine, cocaine base, fentanyl, fentanyl pressed pills, and methamphetamine.

4.  I know from my involvement in the investigation that FBI conducted four controlled purchases from SEAMSTER through CHS between February and April 2025. In advance of each controlled purchase, law enforcement equipped CHS with electronic recording and transmitting devices and provided CHS with pre-recorded U.S. currency. Law enforcement also set up physical surveillance in the area in which the controlled purchases were to take place. Following each controlled purchase, CHS was followed by members of law enforcement to a predetermined meet location, where he provided officers with the suspected narcotics. The suspected narcotics were tested using the TruNarc system and later sent to the DEA laboratory for analysis.

5.  In particular, on about April 1, 2025, CHS arranged to purchase approximately 4 ounces of methamphetamine and 120 grams of fentanyl from SEAMSTER by Snapchat.[2] Specifically, CHS wrote that they wanted to purchase "12

---

[1] CHS, whom I will refer to with male pronouns for clarity, regardless of actual gender, is an informant for the FBI, whose information has been deemed reliable. CHS is financially motivated to cooperate with the government. CHS has been financially compensated for their services. CHS has a criminal history to include Unlawful Possession of Scheduled Drugs, Disorderly Conduct, Negotiating a Worthless Instrument, Theft by Deception, and Violating Conditions of Release. CHS's information has been corroborated by, among other things, electronic and physical surveillance and has been deemed reliable.

[2] I used my government phone to photograph CHS's phone, which displayed the Snapchat conversation between CHS and Seamster.

fingers and 4 zip[s]" and specified that they wanted zips of "Ice".[3] CHS added, "I have the whole 4900 for you".

6. CHS exchanged these messages with Snapchat username "savioso87", which he knew to be operated by SEAMSTER. In addition, during the course of this investigation, FBI sent a subpoena to Snapchat for subscriber records for username "savioso87". The records received in response to the subpoena identified dashaneseamster@gmail.com as the email address associated with Snapchat username "savioso87".

7. After the Snapchat messages described above, law enforcement met with CHS, equipped CHS with electronic recording and transmitting devices, and provided CHS with $4900 of pre-recorded U.S. currency. Law enforcement also established physical surveillance in the area of SEAMSTER's residence on College Street in Lewiston, Maine.

8. CHS drove to the residence, parked, and made a monitored and recorded telephone call to SEAMSTER. SEAMSTER informed CHS that he was not ready and to come back later. CHS departed the property and drove back to a pre-determined meeting location while being followed by members of law enforcement.

9. Approximately 67 minutes later, law enforcement officers performing physical surveillance observed an individual they recognized as SEAMSTER walk out of the residence with a dog, walk over to the front porch, and then walk inside 113 College Street. Law enforcement observed that SEAMSTER appeared to be walking with a limp.

---

[3] Based on my training and experience, I know that a "finger" refers to 10 grams of drugs, a "zip" refers to an ounce of drugs, and "ice" refers to methamphetamine.

Law enforcement was aware that SEAMSTER had been shot in the leg on February 5, 2025 at the Maine Mall in South Portland, Maine.

10. A short time later, CHS returned to the area and parked on the street outside SEAMSTER's residence. Law enforcement surveilling SEAMSTER's residence observed SEAMSTER walk from the rear of 113 College Street to CHS's vehicle and enter the vehicle's front passenger seat. After approximately one minute, SEAMSTER exited CHS's vehicle and walked behind 113 College Street. SEAMSTER again appeared to be walking with a limp.

11. CHS departed SEAMSTER's residence and was followed by members of law enforcement to a predetermined meet location. Upon arrival at the predetermined meet location, CHS provided officers with a clear plastic bag that contained a brown powder and a heat-sealed bag that contained a clear crystal substance. CHS stated that SEAMSTER provided CHS with 4 ounces of methamphetamine and 120 grams of fentanyl for $4900.

12. The suspected methamphetamine and fentanyl were tested using the TruNarc system. The clear crystal substance returned a presumptive positive result for methamphetamine with a total packaging weight of 150.80 grams, and the brown powder returned a presumptive positive result for heroin with a total packaging weight 152.55 grams.

13. Subsequent analysis at the DEA laboratory confirmed that the clear crystal substance was methamphetamine with a net weight of 111.34 grams, and the brown powder contained heroin and a detectable amount of fentanyl with a net weight of 119.5 grams.

14. I am familiar with SEAMSTER based on my involvement in this and other investigations. In reviewing the video surveillance worn by CHS on April 1, 2025, I recognized the individual who provided the narcotics to CHS as SEAMSTER.

## CONCLUSION

Based on the information provide herein, I respectfully submit that there is probable cause to believe that DASHANE SEAMSTER, the defendant, violated Title 21, United States Code, Section 841(a). I therefore request that the accompanying Criminal Complaint be issued.

Adam Morin
Special Agent
Federal Bureau of Investigation

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date: Nov 14 2025

City and state: Portland, Maine

Judge's signature

Karen Frink Wolf, U.S. Magistrate Judge
Printed name and title